UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN CORTLAND,

                Plaintiff,

    v.

PIERCE COUNTY,

                Defendant.

CASE NO. C20-5155RJB

ORDER

THIS MATTER is before the Court on Defendant Pierce County's Motion for Summary Judgment. [Dkt. # 14]. The Court has considered the pleadings and materials filed in support of and in opposition to the Motion.

## I. BACKGROUND.

The parties have stipulated [Dkt. # 12] to the following undisputed facts: On October 31, 2019, Cortland made a Public Records Act request to the Pierce County Prosecuting Attorney's Office, seeking Pierce County Deputy Prosecutor Frank Cornelius's identification badge, which includes his photograph. The County responded with documents and a privilege log. It produced only a redacted copy of Cornelius's ID badge, because photographs of criminal justice agency employees (like him) are statutorily exempt from a PRA request. RCW 42.56.250(8). There is an

1    exception to the exemption for members of the news media. *Id*. Cortland is not a member of the

2    news media.

3            On January 31, 2020, Cortland sued in Pierce County Superior Court, asserting a state

4    law PRA claim and a First Amendment claim. The County timely removed the case here. [Dkt. #

5    1-1].

6                             \* \* \*

7            The PRA exempts from public inspection and copying "Photographs and month and year

8    of birth in the personnel files" of "employees of criminal justice agencies[.]" This exemption

9    does not apply to members of the news media, as defined in RCW 5.68.010(5). RCW

10    42.56.250(8).

11            Cortland's Complaint [Dkt. # 1-1] alleges that Pierce County violated the PRA for two

12    reasons: First, it wrongly applied this "sham" exemption when his request for the ID badge and

13    photograph did not also seek "the month and year" of Cornelius's birth. Second, he claims the

14    County waived the exemption because he claims (and amply[1] demonstrates), Cornelius's

15    photograph is "in the public domain." He seeks statutory penalties, costs and fees.

16            Cortland also asserts a First Amendment claim, arguing that a request for government

17    information is "speech," and that the PRA unconstitutionally distinguishes between the news

18    media's speech and his, by carving out a media exception from the exemption. He argues that

19    RCW 42.56.250(8) is facially void as a "content-based restriction on speech," and asks the Court

20    to invalidate it as unconstitutional.

21

22

---

23    [1] Cortland's complaint includes five color photographs of Cornelius, and repeatedly describes

24    him.

1         Pierce County seeks summary judgment on both claims. It urges the Court to address the

2    issues in reverse order because, it claims, disposal of Cortland's First Amendment claim disposes

3    of his PRA claim.

4         The County argues that RCW 42.56.250(8) does not violate the First Amendment

5    because "laws restricting public access to governmental records do not implicate the First

6    Amendment, at all." Citing *Boardman v. Inslee*, 354 F. Supp. 3d 1232, 1239 (W.D. Wash. 2019).

7    It argues that this conclusion ends the inquiry. It also argues that Cortland's state law PRA

8    claims—that the exemption does not apply because his request did not ask for Cornelius's

9    birthdate, and because other photographs of Cornelius exist on the internet—are in any event

10   baseless and should be dismissed as a matter of law.

11        Cortland's Response includes his own Motion for Summary Judgment, seeking a

12   declaration that RCW 42.56.250(8) is unconstitutional and void on its face. [Dkt # 16 at 2]. He

13   argues his PRA request is speech under the First Amendment, and that the statute is an

14   impermissible content-based regulation.

15        The issues are discussed in turn.

16                              **II. DISCUSSION.**

17   **A.  Summary Judgment Standard.**

18        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

19   file, and any affidavits show that there is no genuine issue as to any material fact and that the

20   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

21   an issue of fact exists, the Court must view all evidence in the light most favorable to the

22   nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty*

23   *Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

24   A genuine issue of material fact exists where there is sufficient evidence for a reasonable

ORDER - 3

1    factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether

2    the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

3    one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears

4    the initial burden of showing that there is no evidence which supports an element essential to the

5    nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6          Once the moving party has met this burden, the nonmoving party then must show that

7    there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

8    establish the existence of a genuine issue of material fact, "the moving party is entitled to

9    judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the

10   moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*,

11   497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then

12   produce concrete evidence, without merely relying on allegations in the pleadings, that there

13   remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

14   **B.  There is no First Amendment right to access government records.**

15         Cortland's core claim is that right to seek records under the PRA—more accurately, his

16   right to *obtain* the records he seeks—is "speech," entitled to First Amendment protection. He

17   claims that because the PRA permits the media to access records that he cannot, it is

18   unconstitutional: it differentiates the result of the request based on the content[2] of the speech.

19

20

21

22   ───────────────

23   [2] Assuming a PRA request is speech, it seems plain that the PRA distinguishes between two
     types of *speakers*, even where the content of the speech—"please provide a copy of Cornelius's
     ID photo"—is identical. Cortland's repeated claim that the exemption is based on the content of

24   some speaker's speech is difficult to follow.

Pierce County's Motion is based primarily on its claim that Courts have repeatedly, consistently established that requests for governmental documents are not speech, and they do not implicate the First Amendment.

The First Amendment prohibits any law "abridging the freedom of speech, or the press, or the right of the people to peaceably assemble, and to petition the government for a redress of grievances." *U.S. Const. amend. I.* Pierce County fairly proposes that Cortland's complaint really raises just one issue: whether exempting employee photographs from PRA requests by non-media requestors violates this constitutional mandate.

The County argues persuasively that it does not. It claims that federal courts are not the proper venue for adjudication of disputes over the public's access to state government agency records. *See Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 582 U.S. 32, 34 (1999). The plaintiff in *Los Angeles Police Dep't* challenged a California statute requiring requestors of information about recent arrestees to "declare that the information sought is for one of five prescribed purposes" and to declare "that the address will not be used directly or indirectly to sell a product or service," in order to access the records.  Like Cortland, it claimed that the restriction on access to public records was facially unconstitutional. The Supreme Court disagreed:

> Petitioner [the Los Angeles Police Department] contends that the section in question is not an abridgment of anyone's right to engage in speech, be it commercial or otherwise, but simply a law regulating access to information in the hands of the police department. We believe that, at least for purposes of facial invalidation, petitioner's view is correct.

*Los Angeles Police Dep't*, 528 U.S. at 40. It explained that "California could decide not to give out arrestee information at all without violating the First Amendment." *Id.*, citing *Houchins v. KQED*, 438 U.S. 1, 14 (1978).

1    *Houchins* involved a media request for access to a jail, to conduct interviews after a

2    prisoner suicide. In rejecting the news station's claim that it had a First Amendment right access,

3    the Supreme Court explained that while the media has a First Amendment right to gather

4    information, the Court has "never intimated a First Amendment guarantee of a right of access to

5    all sources of information with government control." *Houchins*, 438 U.S. at 9.  Justice Stewart's

6    concurrence explained that "[t]he First and Fourteenth Amendments do not guarantee the public

7    a right of access to information generated or controlled by the government, nor do they guarantee

8    the press any basic right of access superior to that of the public generally." *Id.* at 16 (Stewart, J.,

9    concurring).

10    Judge Settle of this District relied on this analysis in a recent, similar PRA case,

11    *Boardman v. Inslee*, 354 F. Supp. 3d 1232 (W.D. Wash. 2019). *Boardman* involved competing

12    summary judgment motions on the constitutional validity of a voter initiative precluding the

13    release of government information that could facilitate identity theft against seniors and

14    vulnerable adults. Plaintiffs sought the information so they could communicate with those

15    persons' caregivers. Like Cortland, they claimed the First Amendment required the state to

16    provide the information they sought.

17    *Boardman* catalogued these and other authorities and determined they provided

18    "substantial support" for Defendants' argument that "laws restricting public access to records do

19    not implicate the First Amendment at all." 354 F. Supp. 3d 1242. It granted the defendants'

20    Motion for Summary Judgment on this basis. *Id*. at 1252. Each of these cases is squarely on

21    point.

22    Cortland's Response does not acknowledge or address *Houchins, Los Angeles Police*

23    *Dep't,* or *Boardman*. Instead, he argues that his own request for information is his protected

24

speech[3]; it conveyed to the County information and ideas about the documents he wished to access.

Even if that characterization is correct, it does not lead to the result Cortland advocates. He argues that the First Amendment also protects his right to *receive* the information he seeks. Cortland emphasizes cases holding that the First Amendment protects not only the right to speak, but to listen. Citing *Fritz v. Gorton*, 83 Wn.2d 275, 295 (1975) ("The right to receive information is a fundamental counterpart to the right of free speech"); and *Va. Pharmacy Bd. v. Va. Consumer Council,* 425 US 748, 757 (1976) (First Amendment protects not only the right to speak but the right to receive information and ideas). None of the cases he cites, though, holds that one can force another (or his government) to speak to him, or to convey to him the information and ideas he hopes to hear.

*Boardman* rejected the plaintiffs' similar claim that they had a First Amendment right to provide the caregivers its speech, and therefore that the government had to provide to them information about those caregivers. It explained: "The right to receive information is derivative of the right to speak: that is, 'where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both.'" *Boardman* at 1245, citing *Va. State Bd. of Pharmacy*, *supra*, 425 U.S. at 756. Because the Court determined that the statute did not infringe on plaintiff's First Amendment right, it found no derivative burden on the caregivers' right to listen. *Id*.

---

[3] The County argues that even a PRA (or FOIA) request itself is not protected speech. Citing *Brennan v. Aston*, 2019 WL 5225047, at *7 (W.D. Wash. Aug. 16, 2019), *report and rec. adopted,* 2019 WL 5212768 (W.D. Wash. Oct. 16, 2019) ("Given that there is no binding authority on this issue, the Court follows the judges in this District who have already concluded that there is no First Amendment right to request public records."). The Court need not resolve this dispute to resolve the Motion.

Cortland also likens the PRA to a public park; a governmentally created public forum where speakers cannot be silenced based on the content of their speech. He claims that RCW 42.56.250(8)'s exemption for photographs requested by the public, which does not apply to news media seeking to access that same content, amounts to impermissible content-based governmental speech regulation.

The *Boardman* plaintiffs similarly argued that the government's list of names was a public forum. The Court rejected that argument, noting first that there was no authority for it, and explaining that even if the list was a forum, the Supreme Court has held that "when government property is not dedicated to open communication the government may— without further justification—restrict use to those who participate in the forum's official business[.]" *Boardman* at 1421, citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 53 (1983).

Based on his conclusion that his right to access is speech, and the PRA exemption is a content-based restriction on that speech, Cortland cites a series of First Amendment cases holding that content-based restrictions are subject to strict scrutiny. *See* for example, *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2231 (2015) ("Content based restrictions on speech . . . can stand only if they survive strict scrutiny[.]"). Cortland claims that the PRA's difference in access "is about as content based as it gets."

As the County points out, this is an unattributed quote from Justice Kavanaugh's Opinion in *Barr v Ass'n of Pol. Cons., Inc.,* 140 S.Ct 2335, 2346 (2020). *Barr* evaluated the constitutionality of a statute permitting "robocalls" seeking to collect a debt to the government, while prohibiting robocalls calls seeking to collect a campaign donation. That *is* "about as content-based as it gets." But the quote and the holding are of limited sway here.

1    Cortland's numerous filings do not clearly articulate what content he claims is being

2    suppressed by a rule that certain employee photographs are exempt from the PRA, when

3    requested by a non-media member of the public. The County describes his claim and argument

4    as nonsensical layers of inapplicable analogies. It argues, again persuasively, that RCW

5    42.56.250(8) is facially neutral; it does not regulate the content of anyone's speech. The County

6    emphasizes that the Supreme Court has firmly established that the public does not have a First

7    Amendment right to obtain information from the government, and that restrictions on access do

8    not implicate the First Amendment, at all. This, it claims, should end the inquiry.

9    The Court agrees. *Boardman* is not binding, but its thorough analysis of precedents that

10   are binding is correct, and it is persuasive. There is no First Amendment right to access

11   governmental records. The PRA's exemption of certain photographs from disclosure does not

12   implicate the First Amendment, and the carve-out allowing the media to access that information

13   is not facially unconstitutional as a matter of law.

14   The County's Motion for Summary Judgment on Cortland's Motion for Summary

15   Judgment should therefore be GRANTED. Cortland's cross-motion[4] should be DENIED.

16   **C. Cortland's PRA claims are fatally flawed.**

17   Cortland also asserts stand alone state law PRA claims. As described above, his

18   complaint includes two such claims: (1) his request did not also seek Cornelius's birthdate,

19   making the exemption inapplicable, and (2) the County waived the right to withhold or redact the

20   photograph because photographs of Cornelius are already in the public domain.

21

22

---

23   [4] Pierce County's Reply [Dkt. # 19] includes a Motion to Strike Cortland's Motion as improperly
     noticed. This may be technically correct, but the facts on this claim are undisputed, and the two

24   motions are opposite sides of the same coin. The County's Motion to Strike should be DENIED.

1    Cortland's Response to the County's summary judgment motion adds the new claim, or

2    at least the new argument, that Pierce County violated the PRA because it failed to demonstrate

3    that Cornelius's ID photo was in his personnel file. He argues Pierce County admits it is usually

4    located on a lanyard around his neck.

5    These issues are addressed in turn.

6    **_1.   The Birthdate._**

7    RCW 42.56.250(8) exempts from disclosure under the PRA certain "photographs and

8    month and year of birth[.]" Cortland argues that because he sought only Cornelius's photograph,

9    but not information about his birthdate, the exemption does not apply. He complains that the

10   PRA does not define "and," leaving the Court to conclude that the legislature intended to exclude

11   only requests that sought all three pieces of information.

12   Pierce County argues that Cortland's interpretation would render RCW 42.56.250(8)

13   meaningless. It correctly points out that it would permit a singe requestor to obtain all three

14   pieces of information, so long as he did not seek them all at one time. It would also run squarely

15   against the canon of construction that courts interpret statutes to not render any section

16   nonsensical or meaningless. Citing _State v Lilyblad,_ 163 Wn.2d 1, 11, 177 P.23d 686, 609

17   (2008), and _Li v. Eddy_, 324 F.3d 1109, 1110 (9th Cir. 2003).

18   The Court agrees. A rule prohibiting "trucks and buses and trailers" on a given road

19   would exclude each of those vehicles, not only a vehicle which is all three at once. Pierce

20   County's Motion for Summary judgment on this portion of Cortland's PRA claim should be

21   GRANTED.

22

23

24

ORDER - 10

1          ## 2. *The Public Domain.*

2          Cortland alleges that because photographs of Cornelius exist in the public domain, the

3  County waived the right to apply the exemption to his request. Thus, he claims, the exemption

4  does not apply, and he is entitled to the photograph and relief under the PRA.

5          Pierce County seeks summary judgment on this claim, arguing that a waiver applies only

6  where the party claiming the exemption has already intentionally disclosed the information. It

7  relies on *Zink v. City of Mesa*, 162 Wn. App. 688, 725, 256 P.3d 384, 403 (2011) for the

8  proposition that even accidental disclosure by the party asserting the exemption is not a waiver

9  of the right to do so. See also *Mobil Oil Corp. v. U.S. E.P.A.*, 879 F.2d 698, 701 (9th Cir. 1989)

10  (District of Columbia standard for waiver requires that the requester demonstrate "that the

11  withheld information has already been specifically revealed to the public and that it appears to

12  duplicate that being withheld.").

13          Cortland's response relies on a FOIA case holding that "materials normally immunized

14  from disclosure under FOIA lose their protective cloak once disclosed and preserved in a

15  permanent public record." *Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 92, 99

16  (D.C. Cir. 2011) (internal citations omitted). As Cortland concedes, *Muslim Advocates* also held

17  that "[A] plaintiff asserting that information has been previously disclosed bears the initial

18  burden of pointing to specific information in the public domain that duplicates that being

19  withheld." *Id.*, Dkt. # 16 at 23.

20          Cortland does not contend or establish that Pierce County has intentionally placed

21  Cornelius's ID Badge photograph in the public domain, by for example, producing it to a

22  different non-media requestor. Instead, he argues that because County policy requires employees

23  to display their badges at work, the public can freely see Cornelius's photo any time they can see

24  him. He also claims that there are lots of photographs of Cornelius's face on the internet. He

1    argues "there is no evidence in the record that these photos and videos described above [from the

2    internet] are not the photos on Mr. Cornelius' ID badge, or alternatively are not substantially

3    similar to the photo on Mr. Cornelius' ID Badge." [Dkt. # 16 at 25].

4        Pierce County's Reply [Dkt. # 19] included evidence that the photographs Cortland found

5    are not the same as the photograph on Cornelius's ID Badge. [See Supp. Dec. of Adrian

6    McDaniel, Dkt. # 20].

7        Cortland Objects to this Declaration as improper new evidence and argument raised for

8    the first time in the County's Reply. [Dkt. # 20]. He complains that the County knew he was

9    going to argue waiver, and that they could and should have addressed this evidence in support of

10   their own Motion. But his own waiver authority makes clear that he bears the "initial burden" of

11   demonstrating that the photos are "duplicates." *Muslim Advocates,* 833 F. Supp. 2d at 99. The

12   County's anticipation of a "waiver" argument did not alter Cortland's initial burden of

13   demonstrating that waiver. The County does not bear the initial burden of demonstrating that it

14   did not waive an otherwise applicable exemption.

15       The Court need not consider McDaniel's Supplemental Declaration to determine as a

16   matter of law that the County did not waive its right to withhold the photo by intentionally

17   placing it in the public domain; there is no evidence that it did.

18       The County's Motion for Summary Judgment on this aspect of Cortland's PRA claim

19   should be GRANTED.

20       **3.  *The Personnel File*.**

21       Cortland's Response claims that the RCW 42.56.250(8) exemption applies only to

22   documents continued in the employees personnel file. He claims that Pierce County Policy

23   requires Cornelius to display his ID Badge and photograph at work, and that he does so. Thus, he

24   claims, the photograph he seeks is not in Cornelius's Personnel File.  As the County's Reply

1    points out, this is the first time he has made this argument. It argues the newly-minted claim is

2    not in his complaint and should not be considered.

3          The Supplemental McDaniel Declaration also provides evidence that Cornelius's official

4    photograph *is* kept in his Personnel File; the one on his badge is a copy of that one. [Dkt. # 20].

5    Cortland again objects to this evidence as improper new evidence and argument raised for the

6    first time in the County's Reply. [Dkt. # 21].

7          Cortland's claim of an "ambush" is not accurate, and may be ironic. A defendant is not

8    required to anticipate and preemptively disprove claims that are raised for the first time in a

9    Response to a Summary Judgment Motion.

10          The County's Motion for Summary Judgment on this aspect of Cortland's PRA

11    claim should be GRANTED.

### III. ORDER

13          Therefore, it is hereby ORDERED:

14          Pierce County's Motion for Summary Judgment [Dkt. # 14] on Cortland's First

15    Amendment claim is GRANTED, and Cortland's First Amendment claim seeking invalidation of

16    RCW 42.56.250(8) as unconstitutional is DISMISSED with prejudice.

17          Cortland's Motion for Summary Judgment on this claim is DENIED.

18          Pierce County's Motion for Summary Judgment on Cortland's state law PRA claims is

19    GRANTED, and those claims are DISMISSED with prejudice.

20          The County's Motion to Strike is DENIED.

21          This case is DISMISSED.

22          The clerk shall send copies of this Order to counsel.

23

24

Dated this 21st day of September, 2020.

ROBERT J. BRYAN
United States District Judge